IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SABRINA FINLAY, an individual, | Case No. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| NOBULL, LLC, a Delaware limited liability company, | |
| Defendant. | |

COMES NOW Plaintiff Sabrina Finlay ("Finlay") and states and alleges the following for her claims for relief against Defendant NOBULL, LLC ("NOBULL"):

**PARTIES, JURISDICTION, AND VENUE**

1. Finlay is an individual who resided in Minneapolis, Minnesota at all times relevant to this dispute, including while employed with NOBULL, and and as of August 2023, currently lives in Prairie Village, Kansas.

2. NOBULL is a Delaware limited liability company and its principal place of business is Boston, Massachusetts.

3. Upon information and belief, none of the members of NOBULL reside in Kansas, and therefore complete diversity exists between the parties.

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the claim exceeds $75,000.00.

5. This court has personal jurisdiction over NOBULL, which is a has a principal place of business in Massachusetts.

6. Venue is proper pursuant to 28 U.S.C. § 1391.

**FACTUAL ALLEGATIONS**

*Factual Background about the Parties*

7. Finlay was, at all relevant times, an entrepreneur engaged in the manufacturing, including product development and production, of footwear, apparel, and accessories (the "Industry").

8. From approximately 2002 to 2016, Finlay worked for an employer in the Industry where she specifically focused on start-up enterprises working to efficiently scale their businesses.

9. From 2016 to 2021, Finlay, by and through Borderland and Co., LLC, launched a new business in the Industry under the trade name Otabo (Borderland and Co., LLC hereinafter referred to as "Otabo").

10. Otabo was a manufacturing partner that worked with brands and retailers to build ethical, efficient, sustainable supply chains that drive competitive growth.

11. NOBULL is currently a globally-recognized fitness brand, which experienced explosive growth and popularity between 2016 and 2023.

12. NOBULL has previously benefitted from highly-visible corporate partnerships with the National Football League, the Professional Golfers' Association of America, CrossFit, and Lifetime Fitness.

13. NOBULL is principally engaged in the retail of athletic footwear, but also sells NOBULL-branded fitness apparel and accessories.

*Origin of Finlay's Relationship with NOBULL*

14. In 2013, Finlay began working with Marcus Wilson ("Wilson") and Michael Schaeffer ("Schaeffer"), who were in the very early stages of developing NOBULL, which was launched the following year.

15. After Finlay launched Otabo, from 2016 to 2021, Finlay continued to work with NOBULL, by and through Otabo, to facilitate the manufacture and production of NOBULL's athletic footwear, upon which it had built its entire brand.

16. From 2019-2021, Wilson and Schaeffer negotiated with Finlay regarding an acquisition in which Finlay would sell Otabo to NOBULL and become a NOBULL employee (the "Transaction").

17. On December 22, 2021, Finlay signed an Employment Agreement; Expense and Restrictive Covenant Agreement; Non-Competition, Non-Solicitation, Non-Disclosure, and Intellectual Property Agreement; and Employee LLC Mirror Interests Award Agreement (collectively, the "Transaction Agreements").

18. Finlay would not have accepted an employment offer from NOBULL under the terms and conditions outlined in the Transaction Agreements but-for NOBULL's representations about NOBULL's financial stability, inventory, and position.

19. The Employment Agreement provided that Finlay could resign for "Good Reason."

20. The definition of Good Reason under the Employment Agreement included the following reasons:

    a. A material diminution in Finlay's authority, duties, or responsibilities; or

    b. Any other action or inaction by the Company that constitutes a material breach of the Employment Agreement.

21. During Finlay's employment as COO, she experienced material diminution in authority, duties, and responsibilities, and NOBULL breached her Employment Agreement in various ways.

22. In accordance with the terms of the Employment Agreement, Finlay submitted her Good Reason notice on November 19, 2022, and afforded NOBULL the requisite 30 day period to cure its deficiencies (the "Good Reason Notice").

23. NOBULL failed to cure its deficiencies outlined in the Good Reason Notice, and the cure period under the Employment Agreement lapsed.

24. Under the terms of the Employment Agreement, Finlay was entitled to, among other things, unpaid Retention Bonus payments as a result of her resignation for Good Reason.

*The Separation Agreement*

25. On December 22, 2022, exactly one year after Finlay signed the Transaction Agreements, NOBULL and Finlay entered into a Separation Agreement (the "Separation Agreement"), which was the only way NOBULL would agree to pay the benefits Finlay was rightly owed under the Transaction Agreements.

26. In exchange for certain benefits under the Separation Agreement, including the Separation Payment as defined in the Separation Agreement, Finlay agreed to release and covenanted not to sue NOBULL for its actions taken through December 22, 2022.

27. Under the terms of the Separation Agreement, NOBULL agreed to pay the outstanding portions of Finlay's Retention Bonus in installments (the "Retention Bonus Payments"), which included payment of portions of the Retention Bonus:

> In exchange for your covenants set forth in this Agreement (including, without limitation, the release of claims described in Section 6 below), and provided that you meet the conditions described in this Agreement, the Company shall provide you with the following: … Payments equal to a total of $5,333,333.32, less all

customary and required taxes and deductions, which represents the four (4) remaining Retention Bonuses as defined in the Employment Agreement. These payments shall be made in the following installments, as stated in the Employment Agreement: (1) $1,333,333.33, less all customary and required taxes and deductions, paid on February 1, 2023; (2) $1,333,333.33, less all customary and required taxes and deductions, paid on August 1, 2023; (3) $1,333,333.33, less all customary and required taxes and deductions, paid on February 1, 2024; and (4) $1,333,333.33, less all customary and required taxes and deductions, paid on August 1, 2024.

28.     NOBULL paid Finlay $1,333,333.33 on or about February 1, 2023.

*NOBULL's Breach of the Separation Agreement*

29.     On August 1, 2023, NOBULL breached the Separation Agreement by failing to pay the Retention Bonus Payment.

30.     On August 9, 2023, NOBULL represented to Finlay, by and through counsel, that NOBULL would not pay the current Retention Bonus Payment.

31.     On February 1, 2024, NOBULL breached the Separation Agreement by failing to pay the Retention Bonus Payment.

32.     As a result of NOBULL's actions, Finlay has been deprived of the continued use of Otabo and its assets.

33.     As a result of NOBULL's actions, Finlay has been deprived of $2,666,666.66 to which she is contractually entitled under the Separation Agreement.

34.     NOBULL refuses to pay the remaining outstanding Retention Bonus Payments, and has not provided any legitimate reason or explanation for its refusal to pay.

**FIRST CAUSE OF ACTION**
**Breach Of Contract (Failure To Pay Retention Bonus Payments)**

35.     Finlay incorporates by this reference the foregoing paragraphs as though fully set forth herein.

36. The Separation Agreement is a valid and binding contract between NOBULL and Finlay, supported by adequate consideration.

37. Under the Separation Agreement, Finlay made certain promises and covenants to NOBULL.

38. Finlay complied with all conditions precedent to receive the Retention Bonus Payments as described in the Separation Agreement and Employment Agreement.

39. NOBULL failed to pay the Retention Bonus Payments.

40. NOBULL has indicated it will not perform its future obligations under the Separation Agreement.

41. Finlay has been damaged by NOBULL's breach of the Separation Agreement.

## SECOND CAUSE OF ACTION
### Violation of Minnesota Payment of Wages Act

42. Finlay incorporates by this reference the foregoing paragraphs as though fully set forth herein.

43. Finlay was a covered employee of NOBULL under the Minnesota Payment of Wages Act.

44. The Retention Bonus Payments constitute wages under the Minnesota Payment of Wages Act.

45. The Retention Bonus Payments were considered "earned" by Finlay.

46. Finlay tendered a written demand for unpaid wages on August 4, 2023.

47. NOBULL refused to pay the Retention Bonus Payments even after receiving a written demand for the same.

48. Finlay has been damaged by NOBULL's violations in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Finlay seeks to recover all damages, whether monetary, general, special, compensatory, punitive, attorneys fees, costs, and other damages, as well as equitable relief, including an injunction enjoining NOBULL from further misconduct as alleged herein, and for such other and further relief as the Court deems appropriate.

**JURY DEMAND**

Finlay demands a trial by jury in the above-captioned matter.

Dated:  February 6, 2024.

>By: */s/ Andrew S. Tugan*
>Andrew S. Tugan, #688526
>KOLEY JESSEN P.C., L.L.O.
>One Pacific Place, Suite 800
>1125 South 103rd Street
>Omaha, NE  68124-1079
>(402) 390-9500
>(402) 390-9005 (facsimile)
>Andrew.Tugan@koleyjessen.com
>
>And
>
>Laurel Gilbert Rogowski, #687760
>Hinckley Allen & Snyder LLP
>28 State Street
>Boston, MA  02109
>(617) 645-9000
>(617) 345-9020 (facsimile)
>lgilbert@hinckleyallen.com
>
>*Attorneys for Plaintiff*

4865-9074-8797.4